## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| TD BANK, N.A.<br><br>        Plaintiff,<br><br>v.<br><br>ECOSHEL, INC., JOHN D. STEEL, and BRYAN KIRKEY,<br><br>        Defendants. | Case No. |

## COMPLAINT

NOW COMES TD Bank, N.A. ("TD" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint against Ecoshel, Inc., John D. Steel and Bryan Kirkey (collectively, "Defendants") and states as follows:

## Parties

1.      TD is a national banking association, chartered by the United States Comptroller of the Currency with its main office in Wilmington, Delaware and having a place of business at 1 Portland Sq., Portland, ME 04101.

2.      Defendant Ecoshel, Inc. ("Ecoshel") is a Maine corporation with a principal place of business at 15 Smith St., Amherst, MA 01002.

3.      Defendant John D. Steel ("Steel") is an individual domiciled at 1035 West Wesley Road NW, Atlanta, GA 30327.

4.      Defendant Bryan Kirkey ("Kirkey") is an individual domiciled at 15 Smith St., Amherst, MA 01002.

1

## Jurisdiction and Venue

5. There is complete diversity of citizenship between the Plaintiff and all Defendants in this case and the amount in dispute exceeds the sum of $75,000.00.

6. As a national bank, TD is exclusively a citizen of Delaware under 28 U.S.C. § 1348, because its main office, as set forth in its articles of association, is in Wilmington, Delaware.

7. Ecoshel is a citizen of Maine and Massachusetts because its principal place of business is in Massachusetts, and it is incorporated in Maine.

8. Steel is a citizen of Georgia because he is domiciled in Atlanta, Georgia.

9. Kirkey is a citizen of Massachusetts because he is domiciled in Amherst, Massachusetts.

10. Accordingly, this Court has subject matter jurisdiction based on complete diversity of citizenship between the Plaintiff and all Defendants pursuant to 28 U.S.C. § 1332.

11. This Court has personal jurisdiction over the parties because the transactions at issue occurred in the State of Maine, TD has places of business in Maine, and the parties agreed to the personal jurisdiction of the State and Federal Courts located in the State of Maine.

12. Venue is properly laid in this Court because the transactions at issue occurred in the State of Maine, TD has places of business in the State of Maine, and Steel and Kirkey consented to the jurisdiction of the United States District Court for the District of Maine.

**Factual Allegations**

13. On or about October 15, 2013, TD and Ecoshel closed a loan transaction whereby TD lent Ecoshel the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) and Ecoshel agreed to repay said loan with interest over time (the "Ecoshel Loan").

14. Steel and Kirkey personally guaranteed the Ecoshel Loan.

15. In 2017, Ecoshel defaulted under the terms of the Ecoshel Loan by, *inter alia*, failing to make monthly installment payments to TD when due, as a result of the Internal Revenue Service recording tax liens against Ecoshel's property, because a judgment was entered against Ecoshel by a third party, and because Ecoshel ceased doing business in the ordinary course.

16. On September 17, 2017, TD demanded Ecoshel, Steel and Kirkey to immediately repay the full balance of the Ecoshel Loan.

17. On or about April 18, 2018, TD commenced a civil action captioned *TD Bank, N.A. v. Ecoshel, Inc., et al.*, Docket No. PORSC-CV-18-160 ("First Ecoshel Lawsuit") against Ecoshel as borrower, and Steel and Kirkey as guarantors, in the Maine Superior Court (Cumberland County) to collect the Ecoshel Loan against Ecoshel, as borrower, and Steel and Kirkey as guarantors.

18. Cedarnorth, LLC, an affiliate of Ecoshel, also guaranteed the Ecoshel Loan and was named as a defendant in the First Ecoshel Lawsuit.

19. However, TD has not named Cedarnorth as a party in this lawsuit because Cedarnorth was administratively dissolved in 2018.

20. On July 18, 2018, Ecoshel filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maine ("Bankruptcy Court"). *See In re Ecoshel, Inc.*, Ch. 11 Case No. 18-10412 (Bankr. D. Me.) ("Bankruptcy Case").

21. On April 3, 2019, the Bankruptcy Court entered its Order Confirming the First Amended Plan of Reorganization of Ecoshel, Inc. dated February 8, 2019 ("Plan") in the Bankruptcy Case.

22. Under the Plan, TD has an allowed unsecured claim in the amount of $550,000.00 against Ecoshel which was required to be paid in 59 equal monthly installments commencing on the effective date of the Plan, amortized over thirty-five years with no interest, with a balloon payment for the remaining principal amount to be made with the 60th payment under the Plan.

23. The effective date of the Plan was on or about August 13, 2019, when Ecoshel disbursed its first plan payment to TD.

24. On May 6, 2019, Steel and Kirkey entered into a Settlement Agreement with TD to resolve the First Ecoshel Lawsuit.

25. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

26. Under the Settlement Agreement, Steel and Kirkey agreed that they were unconditionally liable to TD for the sum of $600,000.00. Provided, however, that TD agreed to accept the sum of $550,000.00 in satisfaction of their obligation, if Steel and Kirkey strictly complied with the terms of the Settlement Agreement.

27. As stipulated in the Settlement Agreement, Steel executed a Commercial Promissory Note payable to the order of TD in the original principal amount of $550,000.00 ("Steel Note").

28. Under the terms of the Steel Note, the Settlement Agreement and the Guaranty, Steel and Kirkey agreed that in the event of their default, the sum of fifty thousand dollars ($50,000.00) would be added to the principal balance of the Note under a "clawback" provision contained therein.

29. A true and correct copy of the Steel Note is attached hereto as Exhibit 2 and is incorporated herein by reference.

30. Under the terms of the Steel Note, Steel was required to make twenty-three (23) monthly payments of principal and interest to TD each in the amount of $4,715.83, with a final balloon payment due on July 10, 2021, of all amounts then due and outstanding.

31. As stipulated in the Settlement Agreement, Kirkey executed and delivered an unconditional and absolute Guaranty of the Steel Note pursuant to which he, *inter alia*, agreed to be jointly and severally liable with Steel for the amounts due under the Steel Note ("Guaranty").

32. A true and correct copy of the Guaranty is annexed hereto as Exhibit 3 and is incorporated herein by reference.

33. Thereafter, TD, Steel and Kirkey agreed to modify the Steel Note on three occasions.

34. Pursuant to the three note modifications, the parties agreed, *inter alia*, to extend the maturity date three times of the Steel Note three times. The final extension of the maturity date of the Steel Note was July 10, 2024.

35. The parties also agreed to increase the interest rate of the Note to 9.25% per annum effective as of July 10, 2023.

36. A true and correct copy of the Third Note Modification Agreement is annexed hereto as <u>Exhibit 4</u> and is incorporated herein by reference.

37. As a result of the Third Note Modification Agreement, on July 10, 2024, the entire balance of the Steel Note became immediately due and payable without notice or demand.

38. Steel and Kirkey failed to pay the Steel Note on or after July 10, 2024.

39. Under the terms of the Steel Note, as a remedy for Steel's default under the Steel Note, the interest rate payable under the Steel Note was increased from 9.25% to 14.25% per annum as of July 10, 2024.

40. As stipulated in the Steel Note: "The rate of interest as set forth in this Note shall apply following entry of any judgment hereon notwithstanding any otherwise applicable statutory post-judgment interest rate."

41. The effect of said provision in the Steel Note is to supersede the otherwise applicable federal post-judgment interest rate provided by 28 U.S.C. § 1961 for the rate specified in the Steel Note as the applicable post-judgment interest rate for any judgment entered against Steel and Kirkey in this case.

42. After all just credit has been given, and as of April 2, 2025, Steel and Kirkey owe TD, jointly and severally, the sum of $552,173.98 pursuant to the Steel Note, as modified, and pursuant to Kirkey's Guaranty which is broken down as follows:

| | |
|---|---:|
| Principal: | $479,926.93 |
| Interest: | $52,825.20 |
| Late Fees: | $5,802.86 |
| Termination Fee: | $25.62 |
| FAME Loan Insurance: | $9,335.41 |
| Legal Fees (through 2/28/25): | $4,267.96 |
| **Total** | **$552,173.98** |
| Per Diem | $187.37 |

43. The principal amount stated in the preceding paragraph includes the $50,000 "clawback" as stipulated in the Steel Note and the Settlement Agreement.

44. As of April 2, 2025, Ecoshel owes TD the sum of $429,926.93 per its agreement under the Plan.

45. Interest continues to accrue on Steel's and Kirkey's obligations to TD at a rate of $187.37 per diem from April 2, 2025, through and including the date that this civil action is commenced.

46. Steel and Kirkey are further obligated, pursuant to the Steel Note and the Guaranty, to pay all of TD's costs, expenses and legal fees associated with their default including TD's legal fees, costs and expenses incurred by TD in this civil action.

47. All conditions precedent to TD commencing this civil action have been satisfied.

## Count I
### Action on Promissory Note
**(against John D. Steel)**

48. TD realleges its previous allegations as if set forth fully herein.

49. Steel is the maker of the Steel Note.

50. TD is the holder and owner of the Steel Note.

51. As the holder and owner of the Steel Note, TD is the party entitled to enforce the Steel Note against Steel pursuant to Article 3-A of the Maine Uniform Commercial Code, 11 M.R.S. § 3-1301.

52. The Steel Note, as modified, has matured pursuant to its terms and is immediately due and payable without notice or demand.

53. Steel has defaulted under the Steel Note as of July 10, 2024, by failing to pay the Steel Note in full upon maturity.

54. As a remedy for Steel's default, the interest rate due under the Steel Note has increased by 5% per annum to 14.25% per annum.

55. Under the Steel Note, Steel is obligated to pay TD's attorneys' fees and costs of collection in this civil action and in connection with his default prior to the commencement of this civil action.

56. By virtue of the Steel Note, and as of April 2, 2025, Steel is liable to TD on an unconditional instrument for the payment of money in the amount of $552,173.98 as broken down in paragraph 42 of this Complaint.

WHEREFORE, Plaintiff TD Bank, N.A. demands judgment against defendant John D. Steel in an amount not less than $552,173.98, plus costs, pre and post

judgment interest of 14.25% per annum, and attorneys' fees and costs of collection and for such other and further relief as may be just and proper.

### Count II
### Action on Guaranty
### (against Bryan Kirkey)

57. TD realleges its previous allegations as if set forth fully herein.

58. Pursuant to the Guaranty, Kirkey agreed, *inter alia*, to unconditionally guarantee the prompt payment and performance of Steel's obligations to TD under the Steel Note.

59. Kirkey is in breach of the Guaranty because the Steel Note has matured by its terms and the Steel Note remains unpaid.

60. By virtue of the Guaranty, Kirkey is jointly and severally obligated along with Steel to pay the balance due under the Steel Note to TD, as well as TD's costs of collection and attorneys' fees.

WHEREFORE, Plaintiff TD Bank, N.A. demands judgment against defendant Bryan Kirkey in an amount not less than $552,173.98, plus costs, pre and post judgment interest of 14.25% per annum, and attorneys' fees and costs of collection and for such other and further relief as may be just and proper.

### Count III
### Breach of Contract
### (against Ecoshel, Inc.)

61. TD realleges its previous allegations as if set forth fully herein.

62. Pursuant to 11 U.S.C. § 1141: "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor."

63. Upon its confirmation, the Plan became a binding contract between Ecoshel and TD.

64. Under the Plan, TD has an allowed unsecured claim in the amount of $550,000.00 which was required to be paid by Ecoshel in 59 equal monthly installments commencing on the effective date of the Plan, amortized over thirty-five years with no interest, with a balloon payment for the remaining principal amount to be made with the 60th payment under the Plan.

65. Ecoshel missed several monthly installment payments under the Plan. But in all events, a balloon payment for the remaining principal balance was due on August 13, 2024, under the terms of the Plan.

66. Ecoshel has defaulted pursuant to the Plan, and thus breached its contract with TD, because it has failed to pay TD the sum of $429,926.93 as required by the terms of the Plan.

WHEREFORE, Plaintiff TD Bank, N.A. demands judgment against Defendant Ecoshel, Inc. in the amount of $429,926.93, and for its costs, pre and post judgment interest, and such other and further relief as may be just.

Dated at Portland, Maine this 3rd day of April 2025

                                        */s/ Aaron P. Burns*
                                        Aaron P. Burns, Esq.
                                        Counsel for TD Bank, N.A.
                                        aburns@pearcedow.com

                                        PEARCE, DOW & BURNS, LLP
                                        P.O. Box 108
                                        Portland, ME 04112-0108
                                        (207) 822-9900